UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No. 21-CR-28

ASHTON L. HOWARD,

Defendant.

REPORT AND RECOMMENDATION

1. Background

During widespread violence and unrest in Kenosha, Wisconsin, on August 23, 2020, Ashton L. Howard allegedly threw a brick that struck a police captain in the head, rendering him unconscious. (ECF No. 31 at 3.) Howard is charged in a two-count Indictment. Count One charges him with having "[o]n or about August 23, 2020, in the State and Eastern District of Wisconsin,"

> knowingly committed an act to obstruct, impede, and interfere with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructed, delayed, and adversely affected commerce, the movement of any article and commodity in commerce, and the conduct and performance of any federally protected function.
> In violation of Title 18, United States Code, Section 231(a)(3).

(ECF No. 12 at 1.)

Howard seeks to dismiss this charge, arguing that 18 U.S.C. § 231(a)(3): (1) exceeds Congress's authority under the Commerce Clause (ECF No. 27 at 11-21); (2) violates the First Amendment (ECF No. 27 at 21-33); and (3) is unconstitutionally vague in violation of the Due Process Clause (ECF No. 27 at 33-38). Alternatively, he argues that this count of the Indictment "fails to fulfill either the notice or presentment requirements of the Fifth and Sixth Amendments." (ECF No. 27 at 39.)

**2. Analysis**

Section 231 to Title 18 of the United States Code is entitled "Civil disorders" and in its entirety provides:

(a)

> (1) Whoever teaches or demonstrates to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function; or
>
> (2) Whoever transports or manufactures for transportation in commerce any firearm, or explosive or incendiary device, knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder; or
>
> (3) Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties

incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—

Shall be fined under this title or imprisoned not more than five years, or both.

(b) Nothing contained in this section shall make unlawful any act of any law enforcement officer which is performed in the lawful performance of his official duties.

"The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

**2.1. Commerce Clause**

The federal government lacks a general police power. *See, e.g.*, *Taylor v. United States*, 136 S. Ct. 2074, 2082-83 (2016) (Thomas, J., dissenting). But Article I, Section 8, Clause 3 of the United States Constitution grants to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." "The Commerce Clause enables Congress to regulate and protect the use of the channels of commerce, instrumentalities of interstate commerce, and those activities having a substantial relation to interstate commerce." *United States v. Wehrle*, 985 F.3d 549, 557 (7th Cir. 2021) (citing *United States v. Lopez*, 514 U.S. 549, 558-59 (1995)); *United*

*States v. Khan*, 771 F.3d 367, 374 (7th Cir. 2014) (citing *United States v. Stokes*, 726 F.3d 880, 894 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 713, 187 L. Ed. 2d 573 (2013)).

Howard argues that § 231(a)(3) plausibly falls under only the third category of Congress's Commerce Clause power—the power to regulate those activities that have a substantial relation to interstate commerce. (ECF No. 27 at 14.) But, in regulating any act relating to "civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce…" (emphasis added), Howard contends that § 231 is not limited to conduct that has a "*substantial* relation to interstate commerce." (ECF No. 27 at 17.)

The government responds that the Hobbs Act, 18 U.S.C. § 1951(a), also uses the "in any way or degree" language ("Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion…shall be fined under this title or imprisoned not more than twenty years, or both."). (ECF No. 31 at 12); *see also* 18 U.S.C. § 1956 (defining "financial transaction" in the money laundering statute, in part, as "a transaction which in any way or degree affects interstate or foreign commerce …."). And the Court of Appeals for the Seventh Circuit has repeatedly rejected Commerce Clause challenges to the Hobbs Act, holding that only a *de minimis* effect on commerce need be shown. *United States v. Carr*, 652 F.3d 811, 813 (7th Cir. 2011) (citing *United States v. Griffin*, 493 F.3d 856, 861 (7th Cir. 2007); *United States v. Sutton*, 337 F.3d 792, 796 (7th Cir. 2003); *United States v. Peterson*, 236 F.3d 848, 852 (7th Cir. 2001); *United States v. Watson*, 525 F.3d 583, 590 n.3

4

(7th Cir. 2008)). Consistent with this long line of cases, the government argues that § 231(a)(3) is a valid exercise of Congress's power under the Commerce Clause provided the civil disorder had at least a *de minimis* effect on interstate commerce.

In *Carr*, the court explained why *United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740 (2000), and *United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624 (1995), two cases relied upon by Howard, did not require the court reconsider its holding that a *de minimis* effect on interstate commerce is sufficient to invoke Congress's Commerce Clause power:

> In this case, there is no similar risk that the Hobbs Act will obliterate all limits on federal power. Although robbery itself is not necessarily economic activity, Carr's crime targeted a business engaged in interstate commerce. And unlike the statutes at issue in *Lopez* and *Morrison*, the Hobbs Act contains a jurisdictional element which requires the government to prove the interstate nexus. [*Peterson*, 236 F.3d at 852] ("[The Hobbs Act] does not federalize all robberies because all robberies per se affect interstate commerce; rather, it applies only to robberies with the proven effect."). An act of violence against even one business, like the convenience store in this case, could conceivably deter economic activity and thus harm national commerce. The economic harm would not necessarily depend upon the amount of money with which any particular defendant absconds. If retail stores, in the aggregate, have a substantial effect on commerce (which they undoubtedly do, *see* [*Sutton*, 337 F.3d at 796 n.2]), then the federal government has a legitimate interest in preventing any crime like the one in this case.

*Carr*, 652 F.3d at 813-14.

In an attempt to distinguish this authority, Howard emphasizes that the jurisdictional element in § 231(a)(3) applies to the "civil disorder," not to Howard's conduct. (ECF No. 27 at 16; *see also* ECF No. 34 at 16.) Thus, the government must prove

only that the civil disorder affected interstate commerce "in any way or degree" but need not prove that Howard's alleged obstruction (throwing the brick) affected commerce.

Howard's understanding of the statute is correct but unhelpful to his argument. In the interest of safeguarding interstate commerce, Congress is permitted to regulate conduct that may "obstruct, delay, or adversely affect" such commerce. It is easy to recognize how civil disorder may plausibly have more than a *de minimis* effect on interstate commerce, and for present purposes it is sufficient to note that the government alleges that, as a result of the unrest that consumed parts of Kenosha on August 23, 2021, certain businesses closed or suspended services. (ECF No. 31 at 3, fn. 3.)

Proof that the underlying civil disturbance affected interstate commerce is a sufficient jurisdictional hook for Congress to proscribe conduct that stands to exacerbate or aggravate such disorder. A person who "commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder" acts to interfere with officials' efforts to quell that disorder, and thus stands to, at a minimum, extend the effect on interstate commerce. In the interest of protecting interstate commerce, Congress may proscribe conduct that interferes with efforts to address threats to such commerce.

In this regard, the operation of § 231(a)(3) is similar to how 18 U.S.C. § 924(c) operates in that under § 924(c) it is unnecessary to prove that the brandishing of a firearm affected interstate commerce. Rather, it is sufficient to prove that the underlying crime of violence, *e.g.*, a Hobbs Act robbery, *see United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017), affected interstate commerce.

Section 231(a)(3) is perhaps unusual (Howard argues it is unique) in that the defendant need not personally do anything that affects interstate commerce. The underlying civil disorder (which must affect commerce) may be perpetrated wholly by third parties; the defendant may need not have any association with it or even know of the civil disorder. However, Howard has not shown that this aspect of the law renders it unconstitutional under the Commerce Clause. He has not, for example, pointed to any authority suggesting that a statute's jurisdictional element must always be supported by a scienter element.

In sum, the express jurisdictional element in § 231 eliminates the risk that the statute will obliterate all limits on federal power. *See Carr*, 652 F.3d at 813-14. As with a prosecution under the Hobbs Act, to sustain a prosecution under § 231(a)(3) the Commerce Clause requires that the government prove only a *de minimis* effect on interstate commerce. *See Carr*, 652 F.3d at 813-14. Specifically, the government need prove only that the underlying civil disorder, not the defendant's alleged obstruction,

7

impedance, or interference with a law enforcement officer, had at least a *de minimis* effect on commerce.

Therefore, the court will recommend that Howard's motion to dismiss Count One on the ground that § 231(a)(3) exceeds the federal government's authority under the Commerce Clause be denied.

**2.2. First Amendment**

Howard does not argue that throwing a brick at a police officer's head is expressive conduct protected by the First Amendment. Thus, he is not making an "as applied" challenge to the statute. Rather, he makes a strictly facial challenge to § 231(a)(3). He argues that § 231(a)(3) is unconstitutional because, in proscribing "any act" that "interfere[s]" with a law enforcement officer, it impermissibly restricts constitutionally protected expressive conduct.

In conjunction with his argument that § 231 violates due process, Howard argues that the statute lacks a *mens rea* element. (ECF No. 27 at 35.) The purported absence of a *mens rea* element is also relevant to the First Amendment analysis. If a defendant need not even intend for his conduct to interfere with a law enforcement officer, it is much easier for protected speech to fall within the ambit of the statute. Thus, the court first addresses whether unintentional acts may violate the statute.

"Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent." *Rehaif v. United States*,

139 S. Ct. 2191, 2195 (2019). The court starts "from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States* v. *X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994); citing *Morissette* v. *United States*, 342 U. S. 246, 256-258 (1952)). Courts "apply the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text." *Id*.

Consistent with this general principle, in discussing § 231(a)(3) the Court of Appeals for the Seventh Circuit noted, "it will not be presumed that Congress intended strict liability for inadvertent or accidental occurrences …." *Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969). The Court of Appeals concluded it was necessary for the government to prove that the defendant "intended to obstruct, impede, or interfere." *Id*. It was unnecessary, however, for the government to prove that the defendant knew the "official capacity of those persons" with whom the defendant interfered. *Id*.

Other courts have similarly interpreted § 231(a)(3) as requiring proof that the substantive act or attempt was done willfully and knowingly. *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976); *United States v. Rupert*, No. 20-CR-104 (NEB/TNL), 2021 U.S. Dist. LEXIS 46798, at *20 (D. Minn. Mar. 12, 2021); *United States v. McArthur*, 419 F. Supp. 186, 190 (D.N.D. 1975) (citing *United States v. Jaramillo*, 380 F. Supp. 1375, 1376, (D.

Neb. 1974); *United States v. Banks-Means*, 383 F. Supp. 368 (D.S.D. 1974); *United States v. Red Feather*, 392 F. Supp. 916 (D.S.D. 1975)); *see also United States v. Dodge*, 538 F.2d 770, 780 (8th Cir. 1976) (overturning conviction under § 231(a)(3), in part, because the government failed to prove "the requisite intent").

Accordingly, the court rejects Howard's assertion that § 231(a)(3) lacks a *mens rea* element. Congress intended to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif*, 139 S. Ct. at 2195 (citing *X-Citement Video*, 513 U.S. at 72 (1994)). The Indictment reflects this when it alleges that Howard "*knowingly* committed an act to obstruct, impede, and interfere …." (ECF No. 12 at 1 (emphasis added).)

Regarding Howard's argument that the statute proscribes conduct protected by the First Amendment, "[o]nly a statute that is substantially overbroad may be invalidated on its face." *Houston v. Hill*, 482 U.S. 451, 458 (1987). It is not enough that it may be possible to conceive of some circumstance where the law could be applied in an impermissible fashion. *Id*. Thus, the court's first task is to determine whether the statute "reaches a substantial amount of constitutionally protected conduct." *Id.* (quoting *Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)).

In considering this issue, the Court of Appeals for the Eighth Circuit concluded that "§ 231(a)(3) has no application to speech[] but applies only to violent physical acts." *United States v. Mechanic*, 454 F.2d 849, 852 (8th Cir. 1971); *see also Rupert*, 2021 U.S. Dist.

LEXIS 46798, at *23 (applying *Mechanic* to reject a First Amendment challenge to § 231(a)(3)); *United States v. Banks*, 368 F. Supp. 1245, 1247 (D.S.D. 1973) (same). The government endorses the Eighth Circuit's holding (ECF No. 31 at 18 fn. 11), and the court finds no reason to reach a different conclusion. Interpreting § 231(a)(3) as applying to only violent acts avoids any potential First Amendment problem. *Mechanic*, 454 F.2d at 852.

Therefore, the court will recommend that Howard's motion to dismiss Count One be denied with respect to his argument that § 231(a)(3) is unconstitutionally overbroad.

### 2.3. Due Process

The government violates the Fifth Amendment's due process guarantee if it deprives a person of life, liberty, or property "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

Howard argues that § 231(a)(3) violates due process for several reasons: it is unclear what "act" is proscribed; the proscription "to obstruct, impede, or interfere" "leaves uncertainty as to whether it defines a culpable *mens rea* or a required result"; there is no indication of the connection that must be shown between the civil disorder and whether the defendant must have participated in the civil disorder; and there is "no limiting concept for what it means to obstruct, delay, or adversely affect commerce."

(ECF No. 27 at 34.) He notes that the broad definition of "civil disorder" set forth in 18 U.S.C. § 232(1) could apply to a wide variety of circumstances beyond the sort of riotous unrest that is colloquially associated with "civil disorder." (ECF No. 27 at 34.)

The court's resolution of other aspects of Howard's motion generally addresses his due process arguments. Any effect on commerce, even a *de minimis* effect, is sufficient. The statute incorporates a *mens rea* requirement and thus is not "a trap for those who act in good faith." (ECF No. 27 at 35) (quoting *Colautti v. Franklin*, 439 U.S. 379, 395 (1979).) Moreover, because it "applies only to violent physical acts," *Mechanic*, 454 F.2d at 852, the statute is not "dependent on the subjective reaction of others, rather than the acts and intent of the defendant." (ECF No. 27 at 35.) The fact that the definition of "civil disorder" means that § 231(a)(3) could encompass more routine disturbances, such as a person who punches a police officer who is trying to break up a three-person bar fight, does not suggest that the statute offends due process. The statute is neither standardless nor impermissibly vague.

Therefore, the court will recommend that Howard's due process challenge to the statute be denied.

### 2.4. Sufficiency of the Indictment

Finally, Howard argues that Count One of the Indictment is deficient because it "does not include any description of the actual conduct or the specific circumstances involved." (ECF No. 27 at 40.) Rather, it largely merely reproduces the statutory text.

"An indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (citing Fed. R. Crim. P. 7(c)(1); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)).

Tracking the language of the statute is usually sufficient to comply with the Fifth and Sixth Amendments and Fed. R. Crim. P. 7(c). *United States v. Maez*, 960 F.3d 949, 965 (7th Cir. 2020). "However, an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to 'sufficiently apprise the defendant of what he must be prepared to meet.'" *Smith*, 230 F.3d at 305 (quoting *Russell v. United States,* 369 U.S. 749, 763 (1962)). Thus, an Indictment must, "at a minimum, … provide some means of pinning down the specific conduct at issue." *Id*.

Throughout this report and recommendation, the court has referred to Howard as being charged under 18 U.S.C. § 231(a)(3) for having allegedly thrown a brick that struck a police captain in the head. That detail is not in the Indictment. (ECF No. 12.) Rather, it is derived from the parties' briefs. (ECF Nos. 27 at 11; 31 at 1-3, 15, 23, 27.) The Indictment is completely silent as to what the government alleges Howard specifically did to violate § 231(a)(3). It does not allege any specific act Howard allegedly took, the

13

Case 2:21-cr-00028-PP    Filed 06/03/21    Page 13 of 16    Document 35

person Howard allegedly obstructed, impeded, or interfered with, or state where the conduct allegedly occurred.

From the face of the Indictment Howard can glean only that the government alleges that "on or about August 23, 2020" (so anywhere from perhaps August 22 through August 24, 2020), somewhere "in the State and Eastern District of Wisconsin" (which comprises 28 counties in roughly the eastern third of the state) he did something that obstructed, impeded, and interfered "with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructed, delayed, and adversely affected commerce, the movement of any article and commodity in commerce, and the conduct and performance of any federally protected function." (ECF No. 12 at 1.)

Even narrowing the allegations to merely the unrest in Kenosha on the evening of August 23, 2020, Howard is left uninformed of the nature of the charges. That is unlike, for example, the witness retaliation charge alleged in *Smith*, 230 F.3d at 305, where there were only a narrow class of potential victims or incidents. Here, in the context of widespread civil unrest, there may have been dozens or even hundreds of incidents that could plausibly fall within the ambit of § 231(a)(3). Nor can Howard look to details in another part of the Indictment to fill in the gaps in Count One. *Cf. United States v. Fassnacht*, 332 F.3d 440, 445 (7th Cir. 2003).

14
Case 2:21-cr-00028-PP   Filed 06/03/21   Page 14 of 16   Document 35

In sum, the Indictment lacks any "means of pinning down the specific conduct at issue" in Count One. *Smith*, 230 F.3d at 305. It tells Howard "nothing about the gravamen of the alleged offense." *United States v. Hinkle*, 637 F.2d 1154, 1158 (7th Cir. 1981). The Indictment leaves him guessing what specific action the government attributes to him.

Granted, the defects in Count One are unlikely to prejudice Howard. As noted, the government has stated that its case is limited to a specific incident that was video recorded (*see* ECF No. 31 at 3, fn 5), and Howard is aware of the specific nature of the government's allegations. But prejudice is a factor that usually can be assessed only in hindsight, and thus is relevant only in determining whether a conviction should be set aside due to a defect in the Indictment. *See United States v. Dooley*, 578 F.3d 582, 589 (7th Cir. 2009); *United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008); *Smith*, 230 F.3d at 306; *United States v. Webster*, 125 F.3d 1024, 1029 (7th Cir. 1997) (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)). The court cannot know now whether the government's case at trial will actually track its pretrial representations. In light of the broad allegations in Count One, the government's theory at trial could end up being very different than that presented thus far.

Because Howard timely challenged the sufficiency of Count One of the Indictment prior to trial, the court concludes that it must recommend that the motion to dismiss Count One of the Indictment be granted on the ground that it does not

adequately inform the defendant of the nature of the charges so that he may prepare a defense.

**IT IS THEREFORE RECOMMENDED** that Ashton Howard's motion to dismiss Count One of the Indictment be **granted** on the ground that Count One fails to adequately inform Howard of the nature of the charge.

The court recommends that the motion be denied on all other grounds.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 3rd day of June, 2021.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge