UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    *Plaintiff,*

    *vs.*                                                   Case No. 21-cr-28

ASHTON HOWARD,

    *Defendant.*

---

**OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS**

In response to the Black Lives Matter protests of last summer following the murder of George Floyd at the hands—and under the foot—of a Minneapolis Police officer, the government unearthed a nearly unused and terribly flawed statute, 18 U.S.C. § 231(a)(3), which was created to neutralize prominent civil rights activists, to prosecute Ashton Howard and others around the country. The magistrate judge quickly dispatched with Howard's arguments. The Report and Recommendations, R. 35 ("Report"), did not mention the law's revealing history. The report relies in part on dated and dubious cases, and it simply doesn't address many aspects of Howard's arguments. The statute's myriad flaws violate an array of unconstitutional protections.

Ashton Howard, through his counsel, objects to the magistrate judge's recommendation to deny his motion to dismiss based on his arguments that 1) § 231(a) violates the Commerce Clause, 2) as a content-based restriction on expression that interferes with local interests without a legitimate federal interest in violates the First

*Federal Defender Services of Wisconsin, Inc.*

Amendment, and 3) that the statute is unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause. In support, Howard incorporates by reference his previously filed motion to dismiss, R. 27 and his reply to the government's response brief, R. 34. Howard invites the Court to the following.

### A. Commerce Clause challenge

Howard objects to the magistrate's recommendation to deny his motion to dismiss based on the argument that § 231(a)(3) exceeds the federal government's authority under the Commerce Clause. R. 35 at 8.

It's important to remember the context in which the government has employed § 231(a)(3) in its prosecution of Howard. It had nothing to do with commerce or any sort of economic enterprise. It was a spontaneous protest born of yet another awful incident where a police officer shot a Black man. When a video of this terrible event in Kenosha went viral last August, many people took to the street to register their righteous anger and frustration. This country's long history contains a multitude of street protests, many of which occurred during the Civil Rights era of the 1950's and 60's. And it was this type of advocacy, most recently the Black Lives Matter protests since George Floyd's murder, that the primary sponsor of § 231(a) explicitly sought to target. *See* R. 27 at 2-9; R. 34 at 2-5.

The magistrate's Report acknowledges that the federal government "lacks a general police power." R. 35 at 3. The Court in *United States v. Lopez*, 514 U.S. 549 (1995), reiterated that in the criminal context Congress's power to regulate interstate and foreign

commerce under Article I, § 8, cl. 3, is inherently limited by the Tenth Amendment's reservation of police power to the States. *Id*. at 552-53. It is further limited to those instances where the regulated activity "substantially affects" interstate commerce. *Id*. at 559. In sum, this limited federal power permits Congress to regulate only three categories of activity: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (3) "those activities that substantially affect interstate commerce." *Id.* at 558-59. Only this third category, in which the *Lopez* Court probed the "outer limits" of congressional power, could arguably sustain § 231(a). Howard argues that under *Lopez,* "[t]he Constitution requires a distinction between what is truly national and what is truly local… one of the few principles that has been consistent since the Clause was adopted." *United States v. Morrison*, 529 U.S. 598, 617–18 (2000). The magistrate's Report fails to recognize that principle. Just as in *Morrison*, where the regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States, so too is local policing of crowds, including the Black Lives Matter protests of last summer. The activity that § 231(a)(3) seeks to regulate does not "substantially affect interstate commerce" under *Morrison's* four-part test.[1]

---

[1] Those *Morrison* factors are:
(1) whether the regulated activity is commercial/economic in nature; (2) whether an express jurisdictional element is provided in the statute to limit its reach; (3) whether Congress made express findings about the effects of the proscribed activity on interstate commerce; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated.
529 U.S. at 610-612).

3

*Federal Defender Services*
*of Wisconsin, Inc.*

Another problem with the Report is that, instead of giving the "careful scrutiny" to § 231(a)(3)—purportedly derived from Congress' Commerce Clause authority—that *Lopez* instructed, *see United States v. McKinney*, 98 F.3d 974, 978 (7th Cir. 1996), the magistrate quickly moves to a discussion of the many Commerce Clause challenges to the Hobbs Act that have failed. *See* R. 35 at 4-6. Of course to successfully prosecute a Hobbs Act violation, the government must prove that the *defendant's act* of robbery affected interstate commerce. *United States v. Carr*, 652 F.3d 811, 813-14 (7th Cir. 2011) (emphasis added). But, as the magistrate recognizes, in a § 231(a)(3) prosecution, the government need not prove that Howard's alleged act of obstructing, impeding, or interfering had *any* effect on interstate commerce. The statute's jurisdictional element applies only to the "civil disorder." R. 35 at 5-6. No matter, the Report finds that distinction acceptable and ventured that the "operation of § 231(a)(3) is similar to how 18 U.S.C. § 924(c) operates in that under § 924(c) it is unnecessary to prove that the brandishing of a firearm affected interstate commerce." R. 35 at 7. Howard disagrees, and notes that the Seventh Circuit Pattern Criminal Jury Instructions requires proof that the defendant *committed* the violent offense (which requires proof of the jurisdictional interstate nexus) *and* that he brandished a gun while doing it. So § 924(c) is not a good comparator statute.

In finding that § 231(a)(3)'s jurisdictional element sufficient, the magistrate ignores Howard's arguments that this commercial nexus element is faulty and does not limit the reach of the statute as the Report seems to acknowledge: "It is easy to recognize how civil

4

*Federal Defender Services*
*of Wisconsin, Inc.*

disorder may plausibly have more than a *de minimis* effect on interstate commerce." R. 35 at 6. The statute also has language problems that further diminishes any required link to interstate commerce. *See* R. 27 at 16-17. And the magistrate does not appear to consider Howard's argument under *Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016) that federal laws that regulate "forms of conduct that, even in the aggregate, may not substantially affect commerce" must contain a jurisdictional element so that their "applications . . . do not exceed Congress's authority." The magistrate takes note of Howard's effort to distinguish the jurisdictional element in § 231(a)(3) from that in Hobbs Act Robbery, but then shruggs it off: "Howard's understanding of the statute is correct but unhelpful to his argument." R. 35 at 5-6. But the extent of attenuation between the substantive offense element and jurisdictional element of § 231(a)(3) is unprecedented. The magistrate acknowledges this attenuation: "The underlying civil disorder (which must affect commerce) may be perpetrated wholly by third parties; the defendant may need not have any association with it or even know of the civil disorder." *Id.* at 7. Neither the Report nor the government points to any other federal felony replicating this unique structure.

Finally, the Report ignores *Morrison's* four-factor test for determining whether a statute seeks to regulate activity that "substantially affects interstate commerce." *Supra* p. 3, n.1. For example, regarding the third factor, Congress made no findings to establish that the activity regulated by § 231(a)(3) substantially affects interstate commerce beyond any impact "visible to the naked eye." Looking at *Morrison's* fourth factor shows that the link between the prohibited activity regulated by § 231(a)(3) and the effect on interstate

commerce is too attenuated to bring it within Congress' commerce purview. The Court should grant Ashton Howard's motion to dismiss the indictment based on his Commerce Clause arguments.

### B. Howard's First Amendment challenges

Howard further objects to the magistrate's recommendation to deny Howard's motion to dismiss based on his First Amendment arguments. R. 35 at 11. In his motion to dismiss, Howard argued first that, in relation to what it legitimately covers, § 231(a)(3) burdens a substantial amount of constitutionally protected expression. Second, he argued that § 231(a)(3) did not have a permissible justification for regulating the content of protected expression.

#### 1. Section31(a)(3) burdens a substantial amount of constitutionally protected expression.

Broad criminal statutes like § 231(a)(3) "must be scrutinized with particular care." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987). Howard argues here that the magistrate's report does not do that. The magistrate initially follows the Supreme Court's analysis in *Hill*, 482 U.S. at 458 ("[o]nly a statute that is substantially overbroad may be invalidated on its face"). R. 35 at 10. The magistrate then seeks to allay any concerns by reiterating that "[i]t is not enough that it may be possible to conceive of some circumstance where the law could be applied in an impermissible fashion." *Id.* Howard does not argue that the statute has absolutely no legitimate function or that its reach grabs only constitutionally protected conduct. As the magistrate noted, Howard is not making an "as applied" challenge. He argues that, among the statute's flaws, it is overbroad. An

6

*Federal Defender Services of Wisconsin, Inc.*

Case 2:21-cr-00028-PP   Filed 07/10/21   Page 6 of 12   Document 42

overbreadth claim is unique from traditional facial challenges in that it does not require a plaintiff to plead or prove that the law is unconstitutional in every application. *Bell v. Keating*, 697 F.3d 445, 453 (7th Cir. 2012). *See also United States v. Stevens*, 559 U.S. 460, 483-84 (2010) (Alito, J. dissenting) ("the over-breadth doctrine allows a party to whom the law may be constitutionally applied to challenge the statute on the ground that it violates the First Amendment rights of others").

The Report then turns to the second element of *Hill's* overbreadth analysis, the job of determining whether the statute reaches a substantial amount of constitutionally protected conduct. *Hill*, 482 U.S. at 458. The magistrate quickly answers that question first by citing to *United States v. Mechanic*, 454 F.2d 849 (8th Cir. 1971), and then to the government's approval of *Mechanic*. R. 35 at 10-11.

In *Mechanic,* the Eighth Circuit concluded that § 231(a)(3) only applies to violent physical acts. *Id.* at 852. Thus, the Report concludes, not only does the statute have a *mens rea*, so it covers only intentional acts, but in *Mechanic* the court read into the law a requirement that the government could only prosecute *violent* intentional acts. R. 35 at 10-11. The government's "endorsement" of *Mechanic's* finding ends the magistrate's inquiry: "*Interpreting* § 231(a)(3) as applying to only violent acts avoids any potential First Amendment problem." R. 35 at 11 (emphasis added). But, as Howard argued in his reply brief, R. 34 at 5-7, simply because the government says it would use the statute only for assaultive conduct, that is cold comfort: the statute has no such limit as there is no element requiring force. "[T]he First Amendment protects against the Government; it does not

7

*Federal Defender Services of Wisconsin, Inc.*

leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 4801(2010).

The magistrate's reliance on *Mechanic* is further troubled because *Mechanic* stemmed from the dubious Seventh Circuit case *Nat. Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934 (7th Cir. 1969), where the defendant conceded the statute's constitutionality, and the court held that Congress did not intend the law to impose strict liability for "inadvertent or accidental occurrences." *Id.* at 937. The Eighth Circuit adopted the Seventh Circuit's holding and went further finding that § 231(a)(3) "has no application to speech." *Mechanic*, 454 F.2d at 852. But as Howard argues, a court cannot rewrite a law to make it constitutional, "for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481. R. 27 at 21, 26; R. 34 at 8-11. The statute's language also does not support the Eighth Circuit's decision in *Mechanic,* which appends a requirement of "violence" to the acts prohibited under § 231(a)(3). That type of judicial rewriting of a statute's plain terms is inconsistent with and foreclosed by later Supreme Court directives. The Supreme Court has consistently stated that it will not rewrite a law to conform it to constitutional requirements. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988). *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 884 (1997); and *Stevens*, 559 U.S. 460, 481 (2010); *See. National Ass'n of Mfrs. v. Dep't of Def.*,

138 S. Ct. 617, 629 (2018) ("Of course, those are not the words that Congress wrote, and this Court is not free to 'rewrite the statute' to the Government's liking").

### 2. Section 231(a)(3) regulates protected expression without a permissible justification.

Howard argued that § 231(a)(3)'s broad language and statutory purpose to target certain speech requires strict scrutiny of its content-and-viewpoint-based regulations and that the statute failed this scrutiny. R. 27 at 26-33. Just as the Report makes no mention of the statute's troubling history, the Report does not address his argument that a reviewing court should apply strict scrutiny analysis to determine the constitutionality of § 231(a)(3). Instead, the Report sweeps away this argument, and any need for analysis, by citing to *Mechanic*, which rewrote the statute. But strict scrutiny applies. The law penalizes "any act" of speech or expressive conduct intended merely to "interfere with," seemingly even just to criticize or challenge the manner in which police officers discharge their duties. Thus, it singles out expressive speech, so it is content based. "Content-based regulations are presumptively invalid,.. and thus get strict scrutiny, which means that the law must be narrowly tailored to serve a compelling governmental interest." *Ezell v. City of Chicago*, 651 F.3d 684, 707 (7th Cir. 2011).

Further, the law's racist and vindictive legislative history reflect the views of its main proponents. *See* R. 27 at 2-9; R. 34 at 2-4. Even if this Court views the statute as facially content-neutral, it should still recognize § 231(a)(3) as a "content-based regulation of speech" based on the statute's history. The Supreme Court recognizes two types of content-based regulations: first, regulations based on the content of the topic discussed

9

*Federal Defender Services
of Wisconsin, Inc.*

or the idea or message expressed, and second, regulations that are facially content neutral, but that "cannot be justified without reference to the content of the regulated speech," *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 768 (7th Cir. 2020), cert. denied, 141 S. Ct. 1754 (2021) citing *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015).

Howard argues that § 231(a)(3)'s legislative history demonstrates that its proponents' goal was to suppress communication in support of civil rights and racial justice for Black Americans. Legislative restrictions based on viewpoint are constitutionally infirm. "Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles." *United States v. Playboy Entm't Grp. Inc*, 529 U.S. at 812, 120 S.Ct. 1878. *See also Surita v. Hyde*, 665 F.3d 860, 870 (7th Cir. 2011) ("Just as the government may not favor one speaker over another, neither may it disfavor one speaker over another").

### C. Section 231(1)(3) violates the Due Process Clause because it is unconstitutionally vague.

Howard argues that § 231(a)(3) is unconstitutionally vague because it chills protected speech, provides inadequate notice and it invites arbitrary and discriminatory enforcement and prosecution. R. 27 at 33-38. The magistrate's attention to this section was essentially one paragraph long. *See* R. 35 at 11-12 ("The court's resolution of other aspects of Howard's motion generally addresses his due process arguments"). Howard objects to the Report's recommendation that his motion be denied based on his Due Process Clause arguments.

In rejecting Howard's First Amendment challenge, the magistrate addresses Howard's argument that § 231(a)(3) lacks a *mens rea* element, finding that, "Congress intended to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." R. 35 at 10. But § 231(a)(3) provides no express *mens rea* at all, which is just one example of the law's vagueness problem. *See United States v. Cook,* 970 F.3d 866, 873 (7th Cir. 2020) (expressing concern that a statute with no standards "poses a trap for the person acting in good faith, who is given no guidepost by which he can divine what sort of conduct is prohibited… The concern is heightened when the statute contains no *mens rea* requirement,.. and the uncertainty as to exactly what is proscribed threatens to inhibit the exercise of constitutionally protected rights") (internal citations omitted).

Howard provided multiple examples of the statute's vague and imprecise terminology. R. 27 at 34-37. The Report responds simply that § 231(a)(3) "is neither standardless nor impermissibly vague." R. 35 at 12.

The Supreme Court expounded on its doctrine prohibiting the enforcement of vague laws in *United States v. Davis*, 139 S. Ct. 2319 (2019). The doctrine

> rests on the twin constitutional pillars of due process and separation of powers… Vague laws contravene the first essential of due process of law that statutes must give people of common intelligence fair notice of what the law demands of them… Vague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect. Only the people's elected representatives in the legislature are authorized to make an act a crime. Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide.

11

*Federal Defender Services*
*of Wisconsin, Inc.*

Case 2:21-cr-00028-PP   Filed 07/10/21   Page 11 of 12   Document 42

*Id.* at 2325.

Ashton Howard asks this Court to enter an order granting his motion to dismiss count one of the indictment for the reasons set forth above and in his motion and reply brief.

Dated at Milwaukee, Wisconsin, this 10th day of July, 2021.

Respectfully submitted,

*/s/ John W. Campion*
John W. Campion, WI Bar #1002697
Federal Defender Services
   of Wisconsin, Inc.
517 E. Wisconsin Avenue – Room 182
Milwaukee, WI 53202
Tel. (414) 221-9900
Email: john_campion@fd.org

*Counsel for Defendant, Ashton Howard*