UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

                                                    Case No. 21-cr-28-pp

        v.

ASHTON L. HOWARD,

                    Defendant.

**ORDER OVERRULING OBJECTION (DKT. NO. 42), ADOPTING JUDGE
DUFFIN'S RECOMMENDATION (DKT. NO. 35) AND DENYING MOTION TO
DISMISS COUNT ONE OF THE INDICTMENT (DKT. NO. 27)**

        Following the shooting of Jacob Blake by a police officer in Kenosha,

Wisconsin, a crowd gathered; some members of the crowd threw objects at law

enforcement officers. Dkt. No. 36 at 1. The defendant was a member of the

crowd; the government alleges that the defendant threw an object at a law

enforcement which hit the officer in the head, causing the officer to collapse

and eventually to be taken to a hospital for medical care. Id. at 1-2. The grand

jury returned an indictment charging the defendant with obstruction of law

enforcement during civil disorder (Count One) and being a felon in possession

of ammunition (Count Two). Dkt. No. 12. The defendant moved to dismiss the

indictment, challenging the constitutionality of the statute charged in Count

One and the sufficiency of the indictment. Dkt. No. 27 at 1-2.

        On June 3, 2021, Magistrate Judge William E. Duffin issued a report and

recommendation, finding that Count One failed to adequately inform the

defendant of the nature of the charges so that he could adequately prepare a defense. Dkt. No. 35 at 16. Judge Duffin determined, however, that the statute (18 U.S.C. §231(a)(3)) does not exceed Congressional authority under the Commerce Clause, violate the First Amendment or violate the Due Process Clause. Id. at 8, 11, 12. Five days after Judge Duffin issued that report and recommendation, the grand jury returned a superseding indictment, rendering moot the motion to dismiss the original indictment and addressing Judge Duffin's concerns as to the sufficiency of Count One. Dkt. No. 36.

Twice after the grand jury returned the superseding indictment the defendant requested an extension of time to object to Judge Duffin's recommendation. Dkt. Nos. 37, 40. The court granted both requests; in granting the second motion, the court extended the objection deadline to July 6, 2021. Dkt. No. 42. The defendant did not comply with that court-ordered deadline. Instead, on July 10, 2021, the defendant filed objections without seeking leave of the court or explaining why he had not complied with the court's order. Dkt. No. 42. The government filed a motion, noting that the defendant's objections were late, but asking that, if the court decided to entertain the untimely objections, it be allowed the customary two weeks to respond. Dkt. No. 43. The court granted the government's request and ordered the government to file a response by July 26, 2021. Dkt. No. 45. The court will overrule the untimely objections and deny the defendant's motion to dismiss Count One of the (now superseding) indictment.

## I.    Standard of Review

Federal Rule of Criminal Procedure 59(b) governs a district court's referral of motions to dismiss to magistrate judges. Fed. R. Crim. P. 59(b). Parties have fourteen days to file "specific objections" to a magistrate judge's report and recommendation to a motion to dismiss. Fed. R. Crim. P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the portions to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). Failure to object under Rule 59(b)(2) results in a waiver of a party's right to review; absent an objection, the court will review the recommendation for clear error. See Fed. R. Crim. P. 59(b)(2).

Normally, the court would construe late-filed objections to a recommendation as a waiver of the right to object; the Seventh Circuit has ruled, however, that failure to meet the deadline does not mandate dismissal if the objections are not egregiously late and the opponent has not been prejudiced. United States v. Robinson, 30 F.3d 774, 777 (7th Cir. 1994). This is not the first time that counsel has filed documents after a court-ordered deadline without seeking leave of the court and counsel made no effort to correct his error after the government pointed out the tardy submission in its motion for extension of time. On the other hand, the government has not claimed any prejudice and says that it does not object to the court considering the objections. Dkt. No. 48 at 4, n. 1. The court will consider the objections.

3

## II.     Background

### A.     Background

On August 23, 2020, the police shooting of Jacob Black sparked protests and rioting in Kenosha, Wisconsin, that spanned the course of several days. Dkt. No. 31 at 2. On the evening of the shooting—August 23, 2020—members of the Kenosha Police Department were attempting to move "an unsecured, badly damaged, running squad car that still contained a loaded shotgun." Id. at 3. Among the officers trying to move the vehicle was a captain in the Kenosha Police Department, T.H.; an object thrown from the crowd hit T.H. in the head and knocked him unconscious. Id.

Count One of the original indictment alleged that the defendant, "on or about August 23, 2020,"

> knowingly committed an act to obstruct, impede, and interfere with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructed, delayed, and adversely affected commerce, the movement of any article and commodity in commerce, and the conduct and performance of any federally protected function.

> In violation of Title 18, United States Code, Section 231(a)(3).

Dkt. No. 12 at 1. Count One of the superseding indictment alleges that "on or about August 23, 2020, the defendant

> knowingly committed an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce, the movement of any article and commodity in commerce, and the conduct and performance of any federally protected function.

4

In violation of Title 18, United States Code, Section 231(a)(3).
Dkt. No. 36 at 2.

Count Two of the original indictment charged the defendant with being a felon in possession of ammunition under 18 U.S.C. §§922(g)(1) and 924(a)(2). Dkt. No. 12 at 2. Count Two of the superseding indictment contains the same charge. Dkt. No. 36 at 3.

B.      Defendant's Motion

The defendant moved to dismiss Count One, arguing that the indictment suffered multiple defects. Dkt. No. 27. The first section of the motion addressed the legislative history of the statute charged in Count One and the racial motivations of its proponent, Senator Long of Louisiana. Dkt. No. 27 at 3-9. The defendant asserted that the government had charged him with violating this statute in the context of "a summer of Black Lives Matter protests." Id. at 9. He alleged that his prosecution, and that of another individual in this district, arose from demonstrations "in support of racial justice." Id. at 10-11.

The defendant raised four arguments in support of dismissal, three arising under the Constitution and one based on the sufficiency of the indictment. First, the defendant argued that 18 U.S.C. §231(a)(3) exceeds Congress's Commerce Clause authority by reaching purely intrastate activities between individuals and law enforcement officers. Id. at 1, 11. He argued that while Congress has the authority to regulate activities that "substantially affect interstate commerce," United States v. Lopez, 514 U.S. 549, 558-59 (1995), the statute targets activity that affects commerce "in any way or degree." Id. at 2.

5

The defendant asserted that the statutory language lacked any causal nexus between his acts and the "purported commercial impact," and that it did not require a substantial affect on commerce. Id. at 1-2.

Second, the defendant argued that 18 U.S.C. §231(a)(3) violates the First Amendment, asserting that it is overly broad, id. at 21-27, and that it is a content-based restriction on messages favoring civil rights advocacy, id. at 26-33.

Third, the defendant argued that the statute is unconstitutionally vague—violating the Due Process Clause—because it chills protected speech, provides inadequate notice of criminal conduct and invites arbitrary and discriminatory enforcement. Id. at 33-38.

Fourth, the defendant challenged the "boilerplate allegations in the indictment"—the original indictment—on the ground that it did not give the defendant sufficient notice of what he was required to defend against, in violation of the Fifth and Sixth Amendments. Id. at 38-40.

C.    Government's Response

The government responded that the defendant's reliance on the legislative history was misplaced, asserting that the court must start with the text of the statute to ascertain its plain meaning. Dkt. No. 31 at 5. The government argued that if the statute is unambiguous, the legislative history is irrelevant. Id. at 5. The government asserted that the defendant's "cherry-picked misrepresentations" from the legislative history included quotes relating

6

to earlier proposed legislation and glossed over the fact that Senator Long voted against the proposed legislation that contained §231. Id.

Responding to the defendant's Commerce Clause argument, the government argued that Congress enacted §231(a)(3) to "provide law enforcement and firefighters with the ability to contain and ultimately end" unwarranted interference with interstate commerce. Id. at 8. The government pointed to the statute's jurisdictional hook, which it asserted applies only to the "subset of civil disorders that affect interstate commerce, such as those that cut off access to thoroughfares, prevent use of significant commercial or government buildings, or prevent the movement of goods and articles in commerce." Id. at 10. The government argued that the "substantially affects" test applies where Congress seeks to regulate an entire class of activities rather than a specific effect of the activity of a particular defendant. Id. at 12. It asserted that in cases such as this, the activity need only have minimal impact. Id. Finally, the government argued that the defendant's conduct did not have to affect commerce as long as the underlying civil disorder affected commerce. Id. at 13.

The government rejected the argument that §231(a)(3) is an overbroad content-based restriction on expression. Id. at 14-16. It asserted that §231(a)(3) targets conduct—not speech—and that the defendant's conduct allegedly involved assaulting a police officer by throwing a brick at his head. Id. at 15. It asserted that the statute contains a *mens rea* element that undercuts any argument that someone could be charged for merely engaging in speech.

7

Id. at 19. The government argued that the statute focuses on acts "done with the intent to obstruct, interfere, or impede." Id.

As for the Fifth Amendment, the government argued that the defendant does not have standing to raise a facial vagueness challenge as opposed to challenging the statute as applied. Id. at 25. The government pointed out that the Seventh Circuit has held that a defendant "'who engages in conduct that is clearly proscribed,' such as assaulting a police officer, 'cannot complain of the vagueness of the law as applied to the conduct of others.' *United States. v. Bonin*, 932 F.3d 523, 537 (7th Cir. 2019) . . ." Id. The government argued that because assaulting a police officer is conduct that is "clearly proscribed," there is no need to evaluate the defendant's vagueness claim. Id. The government asserted that the statute has been construed to require intent and that a normally intelligent person would be able to understand it and be put on notice about whether his conduct was forbidden by it. Id. at 26.

Finally, the government asserted that the original indictment provided sufficient notice under the Constitution and Rule 7(c)(1) of the Federal Rules of Criminal Procedure. Id. at 27. The government pointed out that it had advised the defendant of his conduct at the detention hearing, disclosed the search warrant affidavits and provided full discovery. Id. at 28.

D.    Defendant's Reply

The defendant's thirty-two-page reply brief reasserted his belief that §231(a)(3) was drafted and passed to suppress the Civil Rights Movement. Dkt. No. 34 at 3-5. According to the defendant, "the breadth and motivation behind

§231(a)(3) at the time of enactment render it unconstitutional, regardless of whether 'there is some conduct that clearly falls within the provision's grasp.'" Id. at 4. The defendant continues with his argument that the government has not satisfactorily shown how the defendant's selected terms are not vague and cannot be narrowed without "judicial legislation." Id. at 5. The defendant contends that any judicial attempts to "save" §231(a)(3) is improper because only Congress can rewrite the statute. Id. at 9.

With respect to the defendant's Commerce Clause argument, the defendant argues that §231(a)(3) does not narrowly regulate the channels of goods in interstate commerce and dismisses the government's response as outside §231(a)(3)'s plain language. Id. at 14. He says the wording of §231(a)(3) is "fatally afflicted with ambiguous, imprecise and overbroad terms that work together to extend the law's application to a broad spectrum of expressive activity entitled to protection under the First Amendment." Id. at 22. The defendant disputes the government's assertion that §231(a)(3) contains a *mens rea* element and argues that the statute burdens a substantial amount of protected speech. Id. at 23, 25. Words in the statute such as "interfere," "impede" and "instruct" in the statue permit an expansive application and the defendant asserts could be applied to no-violent speech. Id. at 27. The defendant cautions the court to avoid rewriting the statute. Id. at 32.

9

### III.  Judge Duffin's Recommendation

#### A.  Recommendation

Judge Duffin began his report and recommendation with the language of §231 and the definition of "civil disorder" as provided in the statute. Dkt. No. 35 at 2-3. He first addressed the defendant's argument under the Commerce Clause. Judge Duffin agreed with the defendant that §231(a)(3) plausibly falls under the third category of Congress's Commerce Clause power—to regulate those activities that have a substantial relation to interstate commerce. Id. at 4. Judge Duffin found that "[p]roof that the underlying civil disturbance affected interstate commerce is a sufficient jurisdictional hook for Congress to proscribe conduct that stands to exacerbate or aggravate such disorder." Id. at 6. He reasoned that "a person who 'commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder' acts to interfere with the officials' efforts to quell that disorder, and thus stands to, at a minimum, extend the effect on interstate commerce." Id.  at 6.

Judge Duffin, relying on Hobbs Act robbery case law, concluded that the government need only prove that the underlying civil disorder—not the defendant's obstruction—affected interstate commerce and it had a *de minimis* effect. Id. at 7 (citing United States v. Carr, 652 F.3d 811, 813-814 (7th Cir. 2011)). He recommended that the court deny the motion to dismiss on the

ground that §231(a)(3) exceeds the federal government's authority under the Commerce Clause. Id. at 8.

Judge Duffin construed the defendant's First Amendment argument as strictly a facial challenge because the defendant did not argue that throwing a brick at an officer's head is expressive speech. Id. at 8. Judge Duffin relied on Seventh Circuit authority holding that §231(a)(3) requires the government to prove that the defendant "intended to obstruct, impede, or interfere." Id. at 9 (citing Nat. Mobilization Comm. to End War in Viet Nam v. Foran, 411 F.2d 934, 937 (7th Cir. 1969). As such, Judge Duffin rejected the defendant's argument that the statute lacks a *mens rea* element and pointed to the indictment, which alleges that the defendant "knowingly committed an act to obstruct, impede, and interfere . . . ." Id. at 10. Judge Duffin adopted the reasoning of an Eighth Circuit case finding that §231(a)(3) applies only to violent physical acts, United States v. Mechanic, 454 F.2d 849, 852 (8th Cir. 1971), and concluded that such construction avoids First Amendment issues. Id. at 11.

Judge Duffin rejected the defendant's Due Process arguments for many of the same reasons. Id. at 12. Reasoning that the government need only prove a *de minimis* effect on commerce, that the statute incorporates a *mens rea* requirement and that the statute applies to violent acts, Judge Duffin concluded that the statute is "neither standardless nor impermissibly vague." Id.

11

Judge Duffin *did* conclude that the indictment was insufficient. He agreed with the defendant that the indictment provided next to no details aside from a general date, general area, and the statute the defendant was accused of violating. Id. at 13. Judge Duffin explained that most of his knowledge of the facts of the case came from the parties' briefs. Id. Judge Duffin found that from the indictment alone, the defendant would know "'nothing about the gravamen of the alleged offense.'" Id. at 15 (quoting United States v. Hinkle, 637 F.2d 1154, 1158 (7th Cir. 1981)). He acknowledged that that the defects were unlikely to prejudice the defendant because the government had limited the case to the incident that had been video recorded and that the defendant was aware of the nature of the government's allegations. Id. at 15. Nevertheless, Judge Duffin recommended granting the defendant's motion to dismiss.

Five days after Judge Duffin issued this recommendation, the grand jury returned a superseding indictment addressing the concerns Judge Duffin (and the defendant) had raised regarding the sufficiency of the information in Count One. Dkt. No. 36.

B.   Defendant's Objection

The defendant says that Judge Duffin "quickly dispatched" with his arguments, did not discuss the "law's revealing history," "relie[d] in part on dated and dubious cases" and didn't "address many aspects" of his arguments. Id. at 1. The defendant objects only to the portions of the recommendation discussing his first three arguments: the Commerce Clause, the First Amendment and the Due Process Clause. Id.

12

The defendant reminds the court to "remember the context in which the government" has decided to prosecute the defendant, which he asserts had nothing to do with commerce but involved "a spontaneous protest born of yet another awful incident where a police officer shot a Black man." Id. at 2. He accuses Judge Duffin of failing to recognize that the Constitution requires a distinction between what is truly national and what is local. Id. at 3 (citing United States v. Morrison, 529 U.S. 598, 617-18 (2000)). He also suggests that Judge Duffin ignored the defendant's arguments that the commercial nexus element is faulty. Id. at 4. According to the defendant, the "extent of attenuation between the substantive offense element and the jurisdictional element of § 231(a)(3)" is unprecedented because the civil disorder can be perpetrated by third parties. Id. at 5. Finally, the defendant says Judge Duffin ignored the four-factor test for determining whether a statute seeks to regulate activity that "substantially affects interstate commerce." Id.

As for the First Amendment analysis, the defendant says it is not enough to rely on the government's assertion that it would use the statute only for assaultive conduct. Id. He argues that the Eighth Circuit case, Mechanic, cited by Judge Duffin "stemmed from the dubious Seventh Circuit case *Nat. Mobilization Comm. to End War in Viet Nam v. Foran*, . . ." where the defendant conceded the constitutionality of the statute. Id. at 8. The defendant criticizes Mechanic as a judicial rewriting of the statute. Id. According to the defendant, Judge Duffin should have applied a strict scrutiny analysis because the statute is a content-based restriction. Id. at 9.

13

Finally, the defendant attacks Judge Duffin's reasoning with respect to the Due Process argument as "essentially one paragraph long." Id. at 10. He maintains that the statute does not include a *mens rea* requirement and that it uses vague and imprecise terms. Id. at 11.

C.    Government's Response to Defendant's Objection

The government argues that §231(a)(3) falls comfortably within all three areas of Congressional power identified by the court in Lopez. Dkt. No. 48 at 6. The government cites a recent case addressing nearly identical arguments in which the district court wrote that "despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element." Id. at 7 (citing United States v. Pugh, Case No. 20-CR-73, Dkt. No. 95 (S.D. Ala. May 13, 2021)). The government asserts that, like the Hobbs Act, §231(a) seeks to protect interstate commerce from illegal acts that impede commerce. Id. The government insists that Judge Duffin properly considered—and rejected—the argument that the jurisdictional element exceeded Congressional authority. Id. at 8. It emphasizes that the statute requires a civil disorder that, in turn, affects commerce, where law enforcement officers are engaged in the performance of their duties and the defendant commits or attempts to commit an act to obstruct, impede or interfere with the performance of those duties. Id.

The government also responded to the defendant's First Amendment objections, arguing that the limitation to violent acts avoids any First Amendment problems. Id. at 9. The government states that the conduct must

14

"impede, obstruct, or interfere with police officers and firemen." Id. at 10. It argues that this same language incorporates a *mens rea* requirement because the natural reading requires the government to prove the defendant's purpose or intent in carrying out the act was to "obstruct, impede, or interfere with." Id. at 11.

Finally, the government rejects the defendant's argument that Judge Duffin improperly concluded that the statute is not vague. Id. at 12. The government continues to assert that the defendant lacks standing to raise a facial vagueness claim when his own alleged conduct—throwing a brick at an officer's head—clearly was proscribed. Id. at 14.

**IV.    Analysis**

The defendant's objection to Judge Duffin's report and recommendation makes no mention of his argument that Count One of the original indictment was insufficient to put the defendant on notice as to the acts he was accused of committing. After the defendant filed his motion to dismiss, the grand jury returned a superseding indictment providing additional information in Count One and addressing Judge Duffin's concerns. Dkt. No. 36. Accordingly, this court confines its discussion to the defendant's first three arguments—that Count One should be dismissed because it allegedly violates the Commerce Clause, the First Amendment and the Due Process Clause.

A.    Legislative History

Before the court turns to the defendant's specific constitutional challenges, it will address the defendant's focus on the legislative history of the

15

statute. The defendant argues in his objection that Judge Duffin's report

"makes no mention of the statute's troubling history." Dkt. No. 42 at 9. He

asserts that even if the statute is content-neutral on its face, this court should

deem §231(a)(3) "as a 'content-based regulation of speech' based on the

statute's history." Id. The defendant asserts that the statute's "legislative

history demonstrates that its proponents' goal was to suppress communication

in support of civil rights and racial justice for Black Americans," and asserts

that "[l]egislative restrictions based on viewpoint are constitutionally infirm."

Id. at 10.

The defendant's insistence that the court consider the legislative history

of §231(a)(3) even if the statute is content-neutral on its face—and that the

court consider only the portion of the legislative history that supports his

arguments—is puzzling. As the Supreme Court stated only last year,

> [t]his Court has explained many times over many years that, when
> the meaning of the statute's terms is plain, our job is at an end. The
> people are entitled to rely on the law as written, without fearing that
> courts might disregard its plain terms based on some extratextual
> consideration. See, *e.g.*, *Carcieri v. Salazar*, 555 U.S. 379, 387 . . .
> (2009); *Connecticut Nat. Bank. V. Germain*, 503 U.S. 249, 253-54 . .
> . (1992); *Rubin v. United States*, 449 U.S. 424, 430 . . . (1980).

Bostock v. Clayton Cty., Ga., ___ U.S. ___, 140 S. Ct. 1731, 1749 (2020).

At least two district courts have rejected the legislative history argument

the defendant makes here. In May of this year, the district court for the

Southern District of Alabama declined to consider "the legislative history of 18

U.S.C. § 231(a)(3) and . . . the racial motivations for voting for or against it."

Pugh, Case No. 20-CR-73, Dkt. No. 95 at 4. Because the court found the

16

statutory language clear, the Pugh court concluded that the legislative history had no bearing, finding that "even if the statute's application reaches beyond what the legislators may have intended or expected to address, if no ambiguity exists about how the law applies to the facts before the Court, then the legislative history is not considered." Id. at 6 (citing Bostock). In July, the court for the District of Delaware, citing Pugh, noted that it must begin with the statutory language, and declined to consider the defendant's reference to "the legislative history of § 231(a)(3)" and the racial motivations underlying specific representatives' support for the statute when it was enacted." United States v. Wood, No. 20-56 MN, 2021 WL 3048448, *4 (D. Del. July 20, 2021).

The defendant makes the imprecise assertion that "[l]egislative restrictions based on viewpoint are constitutionally infirm." Dkt. No. 42 at 10. True, a legislative restriction that punishes someone for holding a particular viewpoint is invalid. "Viewpoint discrimination is . . . an egregious form of content discrimination." Rosenberger v. Rector and Visitors of Univ. of Md., 515 U.S. 819, 829 (1995). But a legislative restriction imposed by *legislators* with particular viewpoints or intentions is not constitutionally infirm unless the language of that legislative restriction discriminates against *those who are subject* to the statute based on their particular viewpoints. Section 231(a)(3) does not restrict speech, nor does it punish an individual for holding a particular point of view.

This court, then, turns to the legislative history *only* if the language of §231(a)(3) is ambiguous. So the court begins with that language.

17

B.     Statutory Language

The statute states:

> Whoever commits or attempts to commit any act to obstruct,
> impede, or interfere with any fireman or law enforcement officer
> lawfully engaged in the lawful performance of his official duties
> incident to and during the commission of a civil disorder which in
> any way or degree obstructs, delays, or adversely affects commerce
> or the movement of any article or commodity in commerce or the
> conduct or performance of any federally protected function--Shall be
> fined under this title or imprisoned not more than five years, or both.

18 U.S.C. §231(a)(3).

The statute includes definitions of "law enforcement officer," "civil

disorder," "commerce" and "federally protected function." The term "law

enforcement officer" means

> any officer or employee of the United States, any State, any political
> subdivision of a State, or the District of Columbia, while engaged in
> the enforcement or prosecution of any of the criminal laws of the
> United States, a State, any political subdivision of a State, or the
> District of Columbia; and such term shall specifically include
> members of the National Guard (as defined in section 101 of title
> 10), members of the organized militia of any State, or territory of the
> United States, the Commonwealth of Puerto Rico, or the District of
> Columbia not included within the National Guard (as defined in
> section 101 of title 10), and members of the Armed Forces of the
> United States, while engaged in suppressing acts of violence or
> restoring law and order during a civil disorder.

18 U.S.C. §232(7).

The statute defines "civil disorder" as "any public disturbance involving

acts of violence by assemblages of three or more persons, which causes an

immediate danger of or results in damage or injury to the property or person of

any other individual." 18 U.S.C. §232(1). The statute defines "commerce" as

"commerce (A) between any State or the District of Columbia and any place

18

outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia." 18 U.S.C. §232(2). Finally, "federally protected function" "means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by any officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails." 18 U.S.C. §232(3).

The statutory language is not ambiguous. It prohibits the commission of any *act* to obstruct, impede, or interfere with a law enforcement officer engaged in the lawful performance of that officer's official duties performed during the commission of a civil disorder. It does not prohibit, or even mention, speech. It does not apply only to individuals who are involved in the civil disorder during which the officers are performing their official duties. It does not prohibit individuals from participating in acts of civil disobedience. The statutory language does not discriminate against individuals based on their viewpoints. It punishes individuals—regardless of their viewpoints—who *act* to interfere with law enforcement officers who are performing their official duties during a civil disturbance, and regardless of whether the individual is involved in the "civil disorder" during which the officer is performing his or her duties.

Given the statute's unambiguous language, the legislative history—even if it reveals that some of the proponents of the legislation may have been

19

motivated by racial or social animus or may have sought to suppress speech—
is irrelevant.

C.      Commerce Clause

Congress lacks a general police power, but Article I, Section 8, Clause 3
of the Constitution provides a broad power to regulate commerce between the
states. See, *e.g.,* Taylor v. United States, 136 S. Ct. 2074 (2016); Gibbons v.
Ogden, 22 U.S. 1 (1824); U.S. CONST. art. 1, §8, cl. 3. In his objection to Judge
Duffin's recommendation, the defendant cites Morrison, 529 U.S. at 598 and
Lopez, 514 U.S. 549 in support of his argument that §231(a)(3) exceeds
Congress's authority under the Commerce Clause. Judge Duffin cited Lopez
when identifying the three areas Congress may regulate as determined by
Supreme Court and Seventh Circuit precedent: (1) the use of channels of
commerce, (2) the instrumentalities of interstate commerce and (3) activities
that have a substantial relation to interstate commerce. Dkt. No. 35 at 3. See
Lopez, 514 U.S. at 558-59; United States v. Wehlre, 985 F.3d 549, 557 (7th
Cir. 2021).

Judge Duffin addressed the defendant's argument that §231(a)(3)
arguably fits into the third category—an activity that has a substantial relation
to interstate commerce. The Supreme Court has clarified that activities in the
third category—those "substantially affecting" interstate commerce—"may be
regulated so long as they substantially affect interstate commerce in the
aggregate, even if their individual impact on interstate commerce is minimal."
Taylor, 136 S. Ct. at 2079.

20

The defendant "argues that under *Lopez*, '[t]he Constitution requires a distinction between what is truly national and what is truly local... one of the few principles that has been consistent since the [Commerce] Clause was adopted.' *United States v. Morrison*, 529 U.S. 598, 617-618 (2000)." Dkt. No. 42 at 3. He asserts that Judge Duffin's report "fail[ed] to recognize that principle." Id. He suggests that the local policing of crowds, including the crowds that gathered for the Black Lives Matter protests, always has been the province of states and does not "substantially affect interstate commerce." Id.

The two district courts that have addressed this argument—the Southern District of Alabama in Pugh and the District of Delaware in Wood—disagreed. These courts focused on the jurisdictional requirement of §231(a)(3)—its requirement that the "civil disorder" during which law enforcement officers are conducting their duties must be one "which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." Pugh, Case No. 20-CR-73, Dkt. No. 95 at 9; Wood, 2021 WL 3048448, at *5. When the defendant in Wood argued that this jurisdictional requirement was not enough, the Delaware district court looked to circuit court decisions finding that when a statute contains a specific jurisdictional requirement, the government needs to show only a minimal effect on interstate commerce. Wood, 2021 WL 3048448, at *6. It cited decisions from the Third Circuit (United States v. Kukafka, 478 F.3d 531 (3d Cir. 2007), the Sixth Circuit (United States v. Coleman, 675 F.3d 615, 620 (6th Cir. 2012) and the

21

Fourth Circuit (United States v. Hill, 927 F.3d 188, 199 (4th Cir. 2019) (holding that "Congress may proscribe violent conduct when such conduct interferes with or otherwise affects commerce over which congress has jurisdiction.") upholding statutes against the Commerce Clause challenge because they contained explicit jurisdictional elements.

In responding to the defendant's Commerce Clause challenge, the government argued to Judge Duffin that, like §231(a)(3), the Hobbs Act (18 U.S.C. §1951) contains an explicit jurisdictional requirement ("Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce . . ."), and that it had withstood numerous Commerce Clause challenges. Dkt. No. 35 at 4 (citing cases). Attempting to distinguish the jurisdictional element of the Hobbs Act from that of §231(a)(3), the defendant argued to Judge Duffin, and argues to this court, that to prove a Hobbs Act violation, the government must prove that the defendant's *act* obstructed or delayed commerce, while to prove a §231(a)(3) violation, the government must prove that the *civil disorder* during which the law enforcement officers were performing their official duties obstructed or delayed commerce. Dkt. No. 42 at 4.

Judge Duffin did not find this argument persuasive. He wrote:

[The defendant's] understanding of the statute is correct but unhelpful to his argument. In the interest of safeguarding interstate commerce, Congress is permitted to regulate conduct that may "obstruct, delay, or adversely affect" such commerce. It is easy to recognize how civil disorder may plausibly have more than a *de minimis* effect on interstate commerce, and for present purposes it is sufficient to note that the government alleges that, as a result of the unrest that consumed parts of Kenosha on August 23, 202[0],

certain businesses closed or suspended services. (EDF No. 31 at 3, fn. 3.)

Proof that the underlying civil disturbance affected interstate commerce is a sufficient jurisdictional hook for Congress to proscribe conduct that stands to exacerbate or aggravate such disorder. A person who "commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder" acts to interfere with officials' efforts to quell that disorder, and thus stands to, at a minimum, extend the effect on interstate commerce. In the interest of protecting interstate commerce, Congress may proscribe conduct that interferes with efforts to address threats to such commerce.

In this regard, the operation of § 231(a)(3) is similar to how 18 U.S.C. § 924(c) operates in that under § 924(c) it is unnecessary to prove that the brandishing of a firearm affected interstate commerce. Rather, it is sufficient to prove that the underlying crime of violence, *e.g.*, a Hobbs Act robbery, *see United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017), affected interstate commerce.

Section 231(a)(3) is perhaps unusual ([the defendant] argues it is unique) in that the defendant need not personally do anything that affects interstate commerce. The underlying civil disorder (which must affect interstate commerce) may be perpetrated wholly by third parties; the defendant may need not have any association with it or even know of the civil disorder. However, [the defendant] has not shown that this aspect of the law renders it unconstitutional under the Commerce Clause. He has not, for example, pointed to any authority suggesting that a statute's jurisdictional element must always be supported by a scienter element.

Dkt. No. 35 at 6-7.

The defendant argues to this court that "the extent of attenuation between the substantive offense element and jurisdictional element of § 231(a)(3) is unprecedented." Dkt. No. 42 at 5. He asserts that neither the government nor Judge Duffin have pointed "to any other federal felony replicating this unique structure." Id.

23

It is not clear to this court that to be convicted of violating §231(a)(3), the defendant need not personally do anything that affects interstate commerce. A defendant may be convicted of violating the statute only if the civil disorder during which the law enforcement officers are lawfully performing their lawful duties obstructs, delays or affects interstate commerce. As Judge Duffin implied, this means that the officers are, among other things, attempting to quell an interference with interstate commerce. When a person deliberately commits some act to obstruct, impede or interfere with those officers, that person *is* impacting interstate commerce. That person is trying to prevent, or is preventing, the officer from performing duties which include the protection of interstate commerce. The person may not know that that is what he is doing, any more than a defendant who commits a Hobbs Act robbery knows that he is interfering with interstate commerce, or a felon who possesses a gun that previously has traveled in interstate commerce knows that he is committing a federal offense. But the person's act of attempting to obstruct or obstructing the law enforcement officer does impact interstate commerce, by preventing the officer from protecting interstate commerce.

The court concludes, as did Judge Duffin, that the defendant's reliance on <u>Lopez</u> and <u>Morrison</u> is misplaced. The statutes struck down in those cases did not have jurisdictional requirements. Section 231(a)(1) does. Judge Duffin did not "shrug off" the defendant's argument that this jurisdictional requirement is inadequate; he disagreed with that argument, as does this court. The court will not dismiss the indictment under the Commerce Clause.

24

D.    First Amendment

The defendant's objection next asserts that §231(a)(3) violates the First Amendment in two ways. First, he argues that the language of the statute is overbroad and that Judge Duffin did not scrutinize it carefully enough. Dkt. No. 42 at 6. Second, he argues that the statute operates as a content-based restriction that fails the strict scrutiny test. Id. at 9.

The court must consider whether the statute reaches a "substantial amount of constitutionally protected conduct." City of Houston v. Hill, 482 U.S. 451, 458 (1987). The Supreme Court has stated that a statute may be invalidated as overly broad under the First Amendment if "a substantial number of its applications are unconstitutional, [when] judged in relation to the statute's plainly legitimate sweep." Americans for Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2387 (2021) (quoting United States v. Stevens, 559 U.S. 460, 473 (2010)). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." Virginia v. Hicks, 539 U.S. 113, 124 (2003).

Judge Duffin relied on the Eighth Circuit's reasoning to support his assertion that §231(a)(3) does not impact speech—only violent physical acts. Dkt. No. 35 at 10 (citing Mechanic, 454 F.2d at 852). The Pugh court, addressing the same argument the defendant makes here, also concluded that the statute targets conduct rather than speech. Pugh, Case No. 20-CR-73, Dkt. No. 95 at 12.

25

The defendant's objection asserts that the <u>Mechanic</u> court erred in reading into the statute a word that is not there; he argues that the statute itself does not contain the word "violent" or limit its prohibition to violent acts. Dkt. No. 42 at 7. The defendant is correct that the statute does not include the word "violent" or limit its prohibition to violent acts only. It appears that the Eighth Circuit was considering the specific "acts" committed by the defendants in that case—throwing cherry bombs at police officers and firemen—when it referenced "violent acts." <u>Mechanic</u>, 454 F.2d at 852. But that is beside the point. Section 231(a)(3) criminalizes *acts*—violent or otherwise—not speech. It does not mention speech.

The defendant implicitly worries that the government could try to use the statute to prosecute speech. He posits that because the statute does not require a violent act or an assaultive act, the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an "act" that "attempted to obstruct" an officer performing her lawful duties. But the defendant is not charged with yelling or holding up a sign. He is charged with throwing a brick at an officer's head—which is why he cannot make an "as applied" First Amendment challenge.

The language of §231 targets *conduct*, specifically conduct that obstructs, impedes, or interferes with law enforcement officers lawfully engaged in the lawful performance of their duties during a civil disorder that negatively impacts interstate commerce. The fact that there could be a circumstance in which the government could charge someone whose *act* constituted a form of

26

speech or expression does not render §231(a)(3) unconstitutional on its face. The case law makes clear that to violate the First Amendment on its face, a statute must reach "a substantial amount of constitutional protected conduct." Hill, 482 U.S. at 458.

The defendant chastises Judge Duffin for allegedly failing to address his argument that the court was required to apply a strict scrutiny analysis of the language of §231(a)(3). Dkt. No. 42 at 9. He insists that strict scrutiny applies, stating that the law "penalizes 'any act' of speech or expressive conduct intended merely to 'interfere with,' seemingly even just to criticize or challenge the manner in which police officers discharge their duties." Id. This is a disingenuous argument, given that the defendant accused the Eighth Circuit of "rewriting" §231(a)(3) by reading into it a requirement that the prohibited acts must be violent. In making this argument, the *defendant* reads into the statute a requirement that the prohibited "act" be an act of "speech or expressive conduct," and he reads into the statute a requirement that "interfering with" the law enforcement officer's lawful conduct of his lawful duties could constitute criticism. The statute does not mention acts *of speech*. It prohibits acts—period.

The defendant is correct that content-based laws are subject to strict scrutiny. Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015). But §231(a)(3) is not content-based. It prohibits the commission or attempt to commit any act for the purpose of obstructing, impeding or interfering with law enforcement officers who are lawfully performing their lawful duties. Contrary to the

27

defendant's speculation, the statute does not penalize criticizing an officer. Because the statute does not criminalize speech, it does not criminalize content-based speech and thus is not subject to strict scrutiny.

As to the defendant's assertion that the court should consider some of the legislative history to conclude that the racially-motivated statements of at least one legislator render the statute a content-based regulation of speech, the court has addressed that argument. The court will adopt Judge Duffin's recommendation to deny the motion to dismiss on First Amendment grounds.

E.    Due Process

Finally, the defendant objects to Judge Duffin's recommendation that this court reject his Due Process arguments. Judge Duffin explained that the government violates the Fifth Amendment Due Process clause when it deprives a person of life, liberty or property through a "'criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" Dkt. No. 35 at 11 (quoting Johnson v. United States, 576 U.S. 591, 595 (2015)). The defendant argued to Judge Duffin that it was unclear what act §231(a)(3) proscribed, that it was not clear whether there was a *mens rea* requirement, that the statute did not make clear whether the defendant had to have participated in the civil disorder, that there were no limits on the concepts of obstructing, delaying or adversely affecting interstate commerce and that "civil disorder" could apply to all

28

manner of disturbances and not just riots.[1] Id. at 11-12. Judge Duffin rejected these arguments, finding that his resolution of the Commerce Clause and First Amendment arguments had generally addressed this one. Id. at 12. He concluded that the statute did contain a *mens rea* requirement and found that because it applied to "violent acts," it was not dependent on the subjective reactions of others. Id. He found that the fact that the definition of "civil disorder" could apply to routine disturbances (such as someone who punches a police officer trying to break up a bar fight) did not render the statute unconstitutionally vague. Id.

The objection criticizes Judge Duffin's analysis as "essentially one paragraph long." Dkt. No. 42 at 10. The defendant insists that §231(a)(3) "provides no express *mens rea* at all . . . ." Id. at 11. He says that he provided Judge Duffin with several examples of the statute's "vague and imprecise terminology," but that Judge Duffin dismissed his arguments out of hand. Id.

The court disagrees that the statute contains no *mens rea* requirement. The statute does not penalize any act committed during a civil disorder. It

---

[1] It is not clear to the court why the defendant believes this last argument renders the statute unconstitutionally vague. The statute requires a civil disorder to be public, to involve an assemblage of three or more persons and to cause an immediate danger of or result in damage or injury to the property or person of any other individual. Whether an assemblage of happy revelers celebrating the Milwaukee Bucks' NBA championship or a crowd of people understandably angered by injustice, if the civil disorder is public and causes an immediate danger of or results in damage to the property or person of another and obstructs, delays or adversely affects interstate commerce, the law prohibits acts for the purpose of obstructing, impeding or interfering with law enforcement officers lawfully engaged in performing their lawful duties during that disorder.

prohibits acts committed "to obstruct, impede, or interfere with" law enforcement officers lawfully engaged in their lawful duties. In <u>Foran</u>, 411 F.2d at 937, the Seventh Circuit stated,

> It is true that Section 231(a)(3) does not specifically refer to intent, but it only applies to a person who 'commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers. Under such phraseology, it will not be presumed that Congress intended strict liability for inadvertent or accidental occurrences where, as here, the crime is grounded on the common law. Morissette v. United States, 342 U.S. 246, 262-63 . . . [(1952)]. Under Section 231(a)(3), it was unnecessary for Congress to require that offenders know the official capacity of those persons whose activities they intended to obstruct, impede, or interfere with, so long as such persons were lawfully engaged in the lawful performance of their official duties. United States v. Lombardozzi, 335 F.2d 415-416 . . . (2d Cir. 1964) . . . .

The defendant criticizes <u>Foran</u>, describing it as "dubious, . . . where the defendant conceded [§231(a)(3)'s] constitutionality, and the court held that Congress did not intend the law to impose strict liability for 'inadvertent or accidental occurrences.' *Id.* at 937." Dkt. No. 42 at 7. As the defendant correctly states, the plaintiffs did not raise a constitutional challenge to the statute in <u>Foran</u>. But however "dubious" the defendant may find the <u>Foran</u> court's reasoning, that reasoning, to the extent that it is not *dicta*, is binding on this district court. If the defendant believes <u>Foran</u> should be re-visited, he must raise that argument with the Seventh Circuit.

The defendant argued to Judge Duffin that §231(a)(3)'s terms are dependent on the subjective reactions of others, because it asks whether a defendant's conduct interferes with or impedes others and asks whether the defendant's act is incident to and during a civil disorder in which the defendant

may not be involved. Dkt. No. 27 at 35-36. The defendant asserts that these standards "leave it to the discretion of police and prosecutors to determine whether a particular individual's conduct runs afoul of the law." Id. at 36.

The question of whether to arrest and charge someone for any crime leaves to law enforcement and prosecutors, in the first and second instances, the determination of whether that person's conduct runs afoul of the law. A prosecutor who charges a defendant who had twenty grams of heroin with possession with intent to distribute has made a determination that there is sufficient evidence to prove that the defendant possessed that heroin for that purpose. An agent who asks the government to charge someone with insurance or tax fraud has made a determination that the evidence demonstrates that the defendant's conduct was intentionally fraudulent and not in good faith and not an innocent misunderstanding. That is why law enforcement officers and prosecutors are not the last step in the criminal justice system. Judges and/or juries have the final word on whether a defendant did what the officer or prosecutor believes he did, for the purpose the officer or prosecutor believes he did it. The fact that a law enforcement officer or prosecutor makes an initial determination about whether a defendant violated a statute does not render it unconstitutionally vague.

Contrary to the defendant's assertion, the statute does not ask whether the defendant's act is incident to or during the commission of a civil disorder. It asks whether the firemen or law enforcement officers whom the defendant's acts attempt to obstruct, impede or interfere with was lawfully engaged in the

lawful performance of their duties incident to and during the commission of the civil disorder. True, the statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder. But it does prohibit the defendant from taking an action that would obstruct or impede officers *lawfully* performing their *lawful* duties incident to the disorder. It is not clear to the court why it matters whether a person who acts to obstruct or impede officers lawfully conducting their lawful duties incident to a public gathering that is causing an immediate danger of injury to persons or property knows the purpose or the cause of the gathering.

At the end of the day, the defendant's arguments evade the real issue—that he cannot bring a vagueness challenge. While the defendant has posited various ways in which the statute could be considered vague, he has not argued that the statute is vague *as applied to the facts of this case*. He cannot, because he is accused of throwing a brick at an officer's head—conduct that would "obstruct, impede, and interfere with any law enforcement officer lawfully engaged in the lawful performance of his official duties." 18 U.S.C. §231(a)(3). This court is confined to considering whether the statute is vague as applied to the facts of this case, because a party who "engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Holder v. Humanitarian L. Project, 561 U.S. 1, 18-19 (2010) (quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)); see also United States v. Cook, 970 F.3d 866, 877 (7th Cir. 2020) (referring to general rule that a defendant whose conduct is

32

clearly prohibited by a statute cannot be the one to make a facial vagueness challenge). The defendant cannot bring a facial challenge for vagueness because the statue clearly proscribes his conduct.

The court will adopt Judge Duffin's recommendation that it deny the motion to dismiss on due process grounds.

**V.      Conclusion**

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 35.

The court **OVERRULES** the defendant's objections. Dkt. No. 42.

The court **DENIES** the defendant's motions to dismiss Count One under the Commerce Clause, First Amendment and Due Process Clause and **DENIES as moot** defendant's motion to dismiss on insufficiency grounds. Dkt. No. 27.

The court **ORDERS** that by the end of the day on **September 24, 2021**, the parties file a joint status report informing the court of their anticipated next steps—whether they need time to discuss possible resolution or need a hearing to schedule trial dates.

Dated in Milwaukee, Wisconsin this 30th day of August, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

33