UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No. 21-CR-028

ASHTON L. HOWARD,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Richard G. Frohling, United States Attorney for the Eastern District of Wisconsin, and Benjamin W. Proctor and John P. Scully, Assistant United States Attorneys, and the defendant, Ashton L. Howard, individually and by attorney Aneeq Ahmad, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a two-count superseding indictment, which alleges violations of Title 18, United States Code, Sections 231(a)(3), 922(g)(1), and 924(a)(2).

3. The defendant has read and fully understands the charges contained in the superseding indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE
(Obstructing Law Enforcement During a Civil Disorder)
**THE GRAND JURY CHARGES THAT:**

1. At all times relevant, Ashton L. HOWARD ("HOWARD") was a resident of Kenosha, Wisconsin.
2. On or about August 23, 2020, Jacob Blake was shot by a Kenosha Police Officer in Kenosha, Wisconsin. Protests and riots followed in Kenosha, Wisconsin.
3. On or about August 23, 2020, after Blake was shot, a crowd gathered near the location of the shooting in Kenosha, Wisconsin. HOWARD was among those people gathering in that area.
   a. During this time, some members of the crowd damaged a Kenosha Police Department squad car and threw objects at and near law enforcement officers.
   b. During this time, Officer A, a member of the Kenosha Police Department, was working with other officers to secure and move a damaged squad car.
   c. During this time, HOWARD threw an object at Officer A. The object hit Officer A in the head, and Officer A collapsed to the ground. Several other law enforcement officers rushed to assist and protect Officer A. Officer A was then transported away from the scene for medical care.
4. On or about August 23, 2020, in the State and Eastern District of Wisconsin,

**ASHTON L. HOWARD**

knowingly committed an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce, the movement of any article and commodity in commerce, and the conduct and performance of any federally protected function.

All in violation of Title 18, United States Code, Section 231(a)(3).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts alleged in the superseding indictment as well as the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

> On August 23, 2020, Jacob Blake was shot by an officer of the Kenosha Police Department (KPD). That incident triggered both non-violent protests and violent rioting during the evening of August 23, 2020, and the ensuing days, including numerous arsons throughout the City of Kenosha. Kenosha County declared a state of Emergency Curfew and the Wisconsin National Guard

2

eventually deployed over 1,000 individuals to keep the peace. The civil disorder in Kenosha on August 23, 2020, obstructed, delayed, or adversely affected interstate commerce, including the closing of businesses engaged in interstate commerce and delay of mail and package deliveries.

On August 23, 2020, a crowd gathered at the shooting location near the 2800 block of 40th Street in Kenosha. Members of the crowd grew increasingly agitated and began damaging police vehicles. Members of the crowd also began to throw various objects at the law enforcement officers on scene. Around 9:10 p.m., a member of the KPD, Officer A, was working with other KPD officers to move and secure a damaged squad car. Officer A was wearing a vest with the words "POLICE" on the front and back.

While Officer A and other officers were near the vehicle, members of the crowd encroached upon the officers, preventing them from moving forward. A Molotov cocktail was thrown in the direction of the officers and the squad car, which burst into flames near the rear of the vehicle.

Shortly thereafter, another object was thrown at the squad car, causing glass to break. As Officer A turned to see what caused the glass to break, an individual, later identified as Ashton Howard, threw a brick directly at Officer A. The brick hit Officer A in the head and caused him to collapse to the ground unconscious. Other officers came to help Officer A as the crowd encroached. Eventually, with assistance of several officers who came to the scene, Officer A was removed from the scene and transported to a hospital.

Multiple cameras recorded the events surrounding the attack on Officer A. Those videos showed the defendant wearing a black hooded sweatshirt with red strips, a black facemask with distinctive white marks, and black shoes with distinctive red strips, holding a heavy brick and yelling near the disabled police vehicle shortly before Officer A was hit with the brick. Videos also show Officer A getting hit with the brick, and the defendant nearby yelling, "I dropped his bitch ass! I dropped his bitch ass!"

As part of the investigation, agents interviewed multiple witnesses who claimed that an individual, later identified as Ashton Howard, bragged to them that he was the person who hit the officer with the brick on August 23rd. Agents also executed a search warrant at the residence where the defendant was staying and the vehicle he was using. As part of that process, agents found the clothing and facemask the defendant was wearing on August 23rd, the cell phone he was using, and a box containing .45 caliber ammunition that belonged to the defendant.

A search of the defendant's phone, which included a removable SD card, revealed many photos and videos of Ashton Howard. These included selfie videos of Howard in downtown Kenosha on the night of August 23rd, at least three versions of a widely-shared video showing Officer A getting hit in the head with

3

the brick on August 23rd, and several still images from that video showing Officer A on the ground that had emojis indicating "quiet" and "mouth shut."

Records from the cell service provider for Howard's cell phone showed that Howard's phone pinged off of a tower that provided coverage to the 2800 block of 40th Street in Kenosha (where Officer A was hit) around the time that Officer A was hit with the brick.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 5 years and $250,000. Count One also carries a mandatory special assessment of $100 and a maximum of 3 years of supervised release. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNT

8. The government agrees to move to dismiss the remaining count of the superseding indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of obstructing law enforcement during a civil disorder, as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

First, a civil disorder existed at the time of the offense;

Second, the civil disorder obstructed, delayed, or adversely affected interstate commerce or the movement of any article or commodity in commerce, or the performance of any federally protected function;

4

<u>Third</u>, one or more firemen or law enforcement officers (federal, state, or local) were engaged in the lawful performance of their official duties incident to and during the commission of the civil disorder; and

<u>Fourth</u>, the defendant knowingly committed or attempted to commit any act to obstruct, impede, or interfere with such firemen or law enforcement officers.

## **SENTENCING PROVISIONS**

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### **Sentencing Guidelines Calculations**

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the

5

guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 14 under U.S.S.G. § 2A2.2(a), the most analogous guideline under Sentencing Guidelines Manual §§ 1B1.2, 2A2.4(c)(1), and 2X5.1. The parties agree that the defendant may recommend that the base offense level for the offense charged in Count One is 10 under U.S.S.G. § 2B2.4(a).

### Specific Offense Characteristics

17. The parties agree that the brick thrown by the defendant qualifies as a "dangerous weapon" under U.S.S.G. §§ 2A2.2(b)(2)(B) and 2A2.4(b)(1)(B), and that the defendant acted with intent to cause injury to Officer A based on Officer A's status as a government officer. Therefore, the parties agree that, if the Court determines that the base offense level for the offense in Count One is 14 under U.S.S.G. § 2A2.2(a) and/or §2A2.4(c)(1), the following enhancements apply: (1) a four-level increase for use of a dangerous weapon under U.S.S.G. § 2A2.2(b)(2)(B); (2) a six-level increase for an offense motivated by the victim's status as a government officer or employee under U.S.S.G. § 3A1.2(b); and (3) a bodily injury enhancement that is either a five-level increase for serious bodily injury under U.S.S.G. § 2A2.2(b)(3)(B), or a four level increase for substantial

6

bodily injury under U.S.S.G. § 2A2.2(b)(3)(D). The parties further agree that, if the Court determines that the base offense level for the offense in Count One is 10 under U.S.S.G. § 2B2.4(a), the following enhancements apply: a three level increase for offense involving physical contact or a dangerous weapon under U.S.S.G. § 2A2.4(b)(1), and a two-level increase for bodily injury under U.S.S.G. § 2A2.4(b)(2). The parties further understand and agree that, if the applicable guidelines range as calculated by the Court falls below the maximum penalty permitted by statute, the government will recommend that an upward departure pursuant to U.S.S.G. § 3A1.4 n.4 and/or § 5K2.2 is warranted.

### Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised

release and the terms and conditions of the release; and any other matters not specifically addressed by this agreement.

21. The parties understand and agree that the government will recommend a sentence of 60 months' imprisonment, which is the maximum prison term for Count One. The parties understand and agree that the defendant will recommend a sentence within the applicable guidelines range, as determined by the Court.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial

8

obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

27. The defendant agrees to pay restitution as ordered by the court. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

### Property Waiver

28. The defendant agrees to waive any ownership claim to the property listed in the superseding indictment and sign the "Federal Bureau of Investigation Waiver of Ownership of Property" form (FD-1119) regarding that property.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, venue, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

33. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective

assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

### Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

40. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

13

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: Aug 18, 2022

_____
ASHTON L. HOWARD
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: Aug. 17, 2022

_____
ANEEQ AHMAD
Attorney for Defendant

For the United States of America:

Date: August 19, 2022

_____
RICHARD G. FROHLING
United States Attorney

Date: Aug. 18, 2022

_____
BENJAMIN W. PROCTOR
JOHN P. SCULLY
Assistant United States Attorneys

14